ROADWAY EXPRESS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Richard Shadden, Appellee).

Third District (Industrial Commission Division)   No. 3—03—0021WC

Opinion filed April 23, 2004.

Gerald F. Cooper, Jr., and Victor P. Shane, both of Scopelitis, Garvin, Light & Hanson, of Chicago, for appellant.

James M. Ridge, of James M. Ridge & Associates, P.C., of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Claimant, Richard Shadden, age 57, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)) for injuries he sustained on January 20, 2000, while employed as a dockworker for Roadway Express (employer). The arbitrator found the accident arose out of and in the course of claimant's employment and claimant's condition of ill-being is causally related to the injury sustained on that date. The arbitrator ordered the employer to pay claimant's outstanding medical bills in the amount of $19,458.12, ordered the employer to pay temporary total disability benefits of $494.49 per week for 53 1/7 weeks, and found claimant permanently and partially disabled to the extent of 45% of the man as a whole. The Commission, with one dissent, affirmed and adopted the arbitrator's decision. The circuit court of Rock Island reversed the decision of the Commission and remanded for a finding consistent with its opinion that claimant is permanently and totally disabled. On appeal, the employer argues that the circuit court erred in reversing the Commission's determination of the extent of permanent disability; however, we agree with claimant that the judgment of the circuit court is not a final, appealable order, and, thus, the appeal must be dismissed.

## FACTS

Claimant has an eleventh-grade education and was employed as a dockworker for approximately 24 years prior to the instant claim. Claimant has a history of back injuries. He admitted to nine prior lower back injuries and three prior back surgeries. The surgeries took

place in 1979, 1987, and 1989. Claimant settled his 1989 workers' compensation claim for 22½% loss of the man as a whole. After the 1989 surgery, he was released for full-duty work.

On the date of the accident in question, claimant was loading some skids on a trailer when he slipped on a wet surface between two trailers. He testified that one leg went one way, and the other leg went the opposite direction. He immediately felt pain, clocked out, and went home. Claimant returned to work the next day and reported the incident. The employer sent claimant to the company doctor at the Work Fitness Center. Claimant remained under the care of the company physician for several weeks. Claimant continued to work until February 1, 2000, at which time he was referred to Dr. Ridenour by Jan Coons, a nurse consultant retained by the employer.

Claimant saw Dr. Ridenour on February 2, 2000. Claimant told Dr. Ridenour that he was in constant pain with pain in his right buttock, radiating down his thigh and into his calf and foot. He said his right ankle was especially weak. Dr. Ridenour reviewed claimant's MRI, which showed multiple-level upper lumbar laminectomies performed in the past. Dr. Ridenour summed up claimant's condition as follows:

> "Severe denervation throughout the entire right leg. This is chronic in nature. There is now a superimposed L5 type painful radiculopathy with pronounced weakness that has been present ever since January 21 or 22. **** [Claimant's] situation is certainly not straightforward. Because of underlying injuries that he already has, it is highly unlikely that any maneuver, including surgery, will drastically improve his situation."

Dr. Ridenour opined that a decompression might give claimant modest improvement.

On February 9, 2000, Dr. Ridenour performed an L4-L5 laminectomy with right L3-L4, L4-L5, L5-S1 lateral recessed decompression on the right side, and a right discectomy at L4-L5. On February 15, 2000, claimant told Dr. Ridenour that the pain in his leg was dramatically reduced since the surgery, and he was feeling much better. On February 29, 2000, Dr. Ridenour wrote the following concerning the claimant's chances of returning to work:

> "I am sincerely doubtful that [claimant] will ever be able to return to heavy work. I suspect that we are going to have to follow a course whereby we try to improve his physical condition as much as possible[,] then ultimately obtain a functional capacity evaluation and try to get him back to work at a much reduced level."

Dr. Ridenour later prescribed work hardening in an attempt to get claimant back to work.

On May 4, 2000, Dr. Ridenour noted that claimant "has done a

spectacular job of trying to get himself back in condition, and I am very pleased with the progress he has made." However, by August 22, 2000, claimant was complaining of intermittent cramping in his leg, which occasionally became severe and disabling. Dr. Ridenour then prescribed a functional capacities evaluation, which indicated that claimant was capable of light-duty work.

After the evaluation, Dr. Ridenour and Jan Coons hoped that claimant might still improve his endurance and stability, but Dr. Ridenour thought that claimant was most likely at maximum medical improvement. In September 2000, Dr Ridenour opined that claimant might be able to do sedentary or very light-duty work, but was uncertain whether claimant could do so for eight hours a day and recommended that if claimant was going to try to do light-duty work, he work for only four hours per day.

Claimant contacted Todd Miller, the employer's personnel manager, and requested a job within Dr. Ridenour's restrictions. The employer refused to accommodate the restrictions. Claimant did not return to work.

Dr. Ridenour examined claimant on February 22, 2001, and concluded that claimant was "very impaired." Dr. Ridenour did not believe it would be possible for claimant to perform any physical tasks. Dr. Ridenour found that under the circumstances, it would be reasonable for claimant to go on social security disability, explaining as follows:

> "[Claimant] tells me that his attorney has recommended that he consider going on Social Security Disability. Given the difficulties he has, I think this would be very reasonable. This man is very impaired. I think it would be virtually impossible for him to obtain any type of employment that would involve him doing anything even remotely physical."

Jan Coons did not disagree with Dr. Ridenour's conclusions.

Claimant admitted to some residual weakness from his prior back surgeries, but testified that his present condition is much worse than anything he experienced in the past. Claimant's last back surgery occurred in 1989, and he did not miss any work or seek any medical treatment due to back pain during the 1990s. Claimant was not aware of any restrictions placed on him by Dr. Ridenour and testified that his doctor told him to be as active as he could. Claimant also testified about numerous lifestyle changes since the accident, including not being able to sit for more than two or three hours, not being able to walk more than five blocks before his legs begin to shiver and cramp, trouble lifting himself from a kneeling or squatting position, no longer being able to play racquetball or hunt, and difficulty lifting his legs to walk stairs.

No vocational evidence was submitted. Claimant testified that he did not look for any other work. At the time of the hearing, claimant had applied for his union retirement based upon his 25 years of service to the company. Claimant's pension is not related to his disability.

The arbitrator found that the accident of January 20, 2000, arose out of and in the course of claimant's employment and that claimant's present condition of ill-being is causally related to the injury sustained on that date. The arbitrator ordered the employer to pay claimant's outstanding medical bills in the amount of $19,458.12 and to pay temporary total disability benefits of $494.49 per week for $53^{1/7}$ weeks, from January 21, 2000, through January 31, 2001, and found that claimant is permanently and partially disabled to the extent of 45% of the man as a whole. The Commission affirmed and adopted the arbitrator's decision, with one dissent. The five-page dissent set forth that claimant is permanently and totally disabled because a stable labor market does not exist for the services claimant is able to provide, and claimant is not a candidate for vocational rehabilitation. The circuit court of Rock Island County entered an order reversing the decision of the Commission and remanding for a finding consistent with the circuit court's opinion that claimant is permanently and totally disabled. The employer now appeals, arguing (1) the circuit court erred in finding that the decision of the Commission was against the manifest weight of the evidence, and (2) the circuit court's decision that claimant is an "odd lot permanent total" is contrary to the law.

## ANALYSIS

Before addressing the issues raised by the employer, we must first consider whether the order entered by the circuit court is interlocutory. Claimant contends that the circuit court's order reversing the Commission's determination and remanding for a finding consistent with the circuit court's opinion that claimant is permanently and totally disabled is interlocutory and, therefore, not appealable. Claimant insists this court has no jurisdiction and the appeal must be dismissed. Claimant points out several matters yet to be determined. For example, the circuit court's order remanding the cause requires the Commission to provide legal and factual bases for a finding of permanent total disability, the effective date of the permanent total disability, the date temporary total disability expires, any period claimant is not entitled to temporary total or permanent disability benefits, and a determination as to the amount of the permanent total award. Claimant requests that the instant appeal be dismissed and the cause remanded to the Commission for further proceedings.

On the other hand, the employer insists that any matters which remain are incidental and require nothing more than mathematical computations. The employer asserts that all the tasks listed above show that the circuit court's order is final. The employer argues that because the Commission affirmed and adopted the arbitrator's ruling, which ordered temporary total disability benefits through January 31, 2001, permanent total disability benefits begin on February 1, 2001. Likewise, because the Commission, via the arbitrator, set temporary total disability at $494.49, the employer argues that this is a permanent total disability rate and no other rate can be ordered.

■ We agree that if the only purpose of the remand is to have the administrative agency make a mathematical calculation, then the order is final for purposes of appeal. *Williams v. Industrial Comm'n*, 336 Ill. App. 3d 513, 516, 784 N.E.2d 396, 399 (2003). However, in *Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245, 449 N.E.2d 843 (1983), our supreme court stated that when determining the finality of an order, " '[t]he ultimate question to be decided in each case is whether the judgment fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined.' " *Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 844, quoting *Cory Corp. v. Fitzgerald*, 403 Ill. 409, 414-15 (1949). Our supreme court has held that when a circuit court reverses and remands an award, including an award for permanent disability and loss of use, such an order is interlocutory and not appealable. *Stockton v. Industrial Comm'n*, 69 Ill. 2d 120, 370 N.E.2d 548 (1977).

■ In *A.O. Smith Corp. v. Industrial Comm'n*, 109 Ill. 2d 52, 485 N.E.2d 335 (1985), our supreme court reiterated the general rule that an order reversing an award and remanding to the Commission is interlocutory and not appealable. *A.O. Smith*, 109 Ill. 2d at 54, 485 N.E.2d at 336. In that case, an employee died as the result of a compensable work injury that occurred nine years earlier. The appellate court affirmed the circuit court's holding that the survivors' benefits would be properly calculated using the statute in effect at the date of death rather than the date of injury and remanded to the Commission to make a proper calculation. The supreme court, however, elected to retain the appeal rather than remand, finding that all that was involved was a simple mathematical process. The *A.O. Smith* court specifically stated:

"Ordinarily we would dismiss the appeal on the ground that the order is not final and appealable, but in this instance we elect not to do so. The parties have stipulated to the facts, including the amount of the decedent's earnings and the weekly benefits payable if the statute at the time of death is applicable. The calculation of

the amount of the award upon affirmance is a simple mathematical process, and under the circumstances we elect not to dismiss the appeal." *A.O. Smith*, 109 Ill. 2d at 54-55, 485 N.E.2d at 336.

Thus, the question here is whether the instant case presents a question of a simple mathematical calculation or something more.

While the employer relies on *A.O. Smith*, we find it distinguishable from the case at bar. The *A.O. Smith* court pointed out that the parties stipulated to the facts and relied on that stipulation in finding that the case before it amounted to nothing more than a simple math problem. The same situation is not present here, where the circuit court reversed and remanded to the Commission for a finding that claimant is permanently and totally disabled. In the instant case, the Commission must review all the controverted and relevant facts and provide not only a factual basis, but also a legal basis for a finding of permanent and total disability.

Upon remand, the Commission needs to determine the date temporary total benefits expire and permanent and total disability benefits commence. The Commission must also determine the proper permanent and total disability award. We are unconvinced by the employer's argument that these matters have previously been decided and should not be considered again. As previously discussed, the parties have not stipulated to the facts. In its original review of the arbitrator's findings, the Commission determined that claimant was not permanently and totally disabled. Similarly, it is possible that the Commission's previous determinations concerning the date temporary total disability benefits expire would be subject to further scrutiny. The Commission must determine the date on which claimant became permanently and totally disabled and the amount of such an award.

The award of the Commission made pursuant to the order remanding the cause will again be subject to review by the circuit court, which can issue a final order that will be appealable to this court. At that time, this court would be authorized to review the entire record to determine the propriety of the circuit court's original order and the issues the employer attempted to raise herein. See *Stockton*, 69 Ill. 2d at 125-26, 370 N.E.2d at 550.

After careful consideration, we find that the instant case presents more than the issue of a simple mathematical calculation that was present in *A.O. Smith*. As a court of review, we would be overstepping our bounds if we made the factual determinations the employer requests us to make here. Accordingly, the instant appeal must be dismissed and the cause remanded to the Commission for further proceedings.

For the foregoing reasons, the instant appeal is dismissed and the

cause remanded to the Commission for further proceedings consistent with this opinion.

Appeal dismissed.

CALLUM, J., concurs.

JUSTICE HOLDRIDGE, specially concurring:

I agree with the majority's holding that the judgment of the circuit court is not a final, appealable order, and thus the appeal must be dismissed. As the majority notes, the general rule is that an order reversing an award and remanding to the Commission is interlocutory and not appealable. *Stockton v. Industrial Comm'n*, 69 Ill. 2d 120 (1977). Exceptions to the general rule are limited to situations where no material controverted issues remain to be determined (*Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245 (1983)), such as where the only purpose of the remand is for the administrative agency to make a mathematical calculation. *Williams v. Industrial Comm'n*, 336 Ill. App. 3d 513, 516 (2003).

Here, it may appear that the matters to be resolved on remand are merely perfunctory. However, even though the circuit court has directed the Commission to find the claimant permanently and totally disabled, the finding of permanent and total disability is one of substance and requires an analysis of evidence that is not akin to a mathematical calculation. I would read the exception to the general rule very narrowly, limiting it to situations that truly involve mathematical calculations. Substantive evaluations of evidence, even when the ultimate conclusion is directed on remand, should be the province of the Commission.

PRESIDING JUSTICE MCCULLOUGH, dissenting:

I disagree with the majority in stating that this decision of the circuit court is not a final order for the purposes of establishing jurisdiction of this court. As stated in *A.O. Smith* and in *Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245, 449 N.E.2d 843 (1983), if the only purpose of the remand is to have the administrative agency make a mathematical calculation, then the order is final for purposes of appeal. As argued by the respondent in this case, the Commission has no discretion. It must issue an order finding the petitioner to be permanently, totally disabled. There will be no further testimony taken, nor will there be necessary any independent analysis and decision by the Commission. The parties agree that the temporary total disability (TTD) for 53 1/7 weeks at the rate of $494.49 is to be paid for

the period of January 21, 2000, through January 31, 2001, as provided in section 8(b) of the Act. This being the ending date of the temporary total disability, permanent total disability (PTD) begins that next day, which is February 1, 2001. Pursuant to the trial court's mandate, the Commission has no discretion to determine that the PTD should be paid other than the date, February 1, 2001, and the rate of benefit is the same as the TTD, that is 66²/₃% of his average weekly wage, which is $494.49.

In *Williams v. Industrial Comm'n*, 336 Ill. App. 3d 513 (2003), this court addressed the question of whether the decision of the circuit was final for purposes of appeal. In *Williams*, this court stated:

> " 'Jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. [Citations]. A judgment is final for appeal purposes if it determines the litigation on the merits or some definite part thereof so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. [Citations.]'

> *** If *** the agency on remand has *only to act in accordance with the directions of the court and conduct proceedings on uncontroverted incidental matters* or merely make a mathematical calculation, then the order is final for purposes of appeal. See *A.O. Smith Corp. v. Industrial Comm'n*, 109 Ill. 2d 52, 54-55, 485 N.E.2d 335 (1985); *Wilkey*, 96 Ill. 2d at 249-50." (Emphasis added.) *Williams v. Industrial Comm'n*, 336 Ill. App. 3d at 515-16.

The majority finds that the Commission, on remand, needs to determine the date TTD benefits end and total disability begins. This finding is not correct. The arbitrator, Commission, and circuit court found TTD to end January 31, 2001. The circuit court found that claimant was totally disabled pursuant to section 8(f). Section 8(f) states that the permanent award is determined pursuant to section 8(b). Section 8(b)(2) provides that the compensation rate is 66²/₃% of the employee's average weekly wage. The arbitrator, Commission, and circuit court agree the compensation amount is $494.49. Contrary to the majority finding, there is no question as to the extent of TTD or the amount of compensation for TTD, and no question as to an award of PTD or the amount of weekly compensation due.

With respect to the merits of the appeal, the decision of the Commission should be reinstated and is not against the manifest weight of the evidence. The arbitrator found that Dr. Ridenour released the claimant to work, with restrictions, effective January 31, 2001. The claimant was asked if he had looked for work within the restrictions; he testified he had not. The claimant, in fact, had presented no evidence that he attempted to look for a job or undergo vocational

training and, in fact, had applied for and apparently received social security. Dr. Ridenour was of the opinion that the claimant could perform sedentary or very light-duty work as described by the Department of Labor. Claimant testified he regularly rides his bicycle along the Mississippi River to get exercise, rides his Harley Davidson motorcycle, and has not seen Dr. Ridenour since his last visit on March 5, 2001. The arbitrator's award, as modified by the Commission's decision, found that there was no testimony presented by the petitioner contrary to the medical evidence of the opinion of Dr. Ridenour that he could work.

The decision of the Commission should be reinstated.

HOFFMAN, J., joins in this dissent.